## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN VINCENT FUSTINI.,
         Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
         Defendants.

_____ /

Case Number: 10-11625

HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

HON. VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

### REPORT AND RECOMMENDATION

### I. Introduction

This is an action for judicial review of defendant's decision denying plaintiff's

application for social security disability benefits and for supplemental security income (SSI).

Plaintiff proceeds *pro se* in this action.  The matter comes before the court on the Motion for

Summary Judgment filed by the Commissioner.  Plaintiff  has not filed a motion or brief.   In

the application, plaintiff alleged that he became disabled August 3, 2005[1] due to a variety of

psychiatric impairments including bipolar disorder, depression, mood swings, anger issues

and an inability to concentrate.  Plaintiff has also been diagnosed with schizo-affective

disorder, obsessive compulsive disorder, and has at least two prior inpatient psychiatric

---

[1]Because of prior applications, the earliest that plaintiff is entitled to receive disability
benefits is August 28, 2006 and for SSI on September 28, 2007.  Accordingly, this Report will
focus on that time period.  Plaintiff's case was part of an agency pilot program that tested the
elimination of the reconsideration level in certain jurisdictions.  See, Government's Brief p2,
notes 1 and 2.

hospitalizations. (Tr. 236, 271, 307).   Plaintiff had a hearing before an ALJ where he was represented by an attorney.  Plaintiff appeared with counsel in Detroit, and testified via video conference with the ALJ Gary Lee presiding over the hearing from San Francisco, California on February 25, 2009.   The defendant found that plaintiff was not disabled.  The ALJ applied the Grids after finding that plaintiff was unable to perform his past relevant work and concluded that he could perform other work which existed in significant numbers.   The legal standard for review is whether the decision is supported by substantial evidence.  For the reasons discussed in this report, it is recommended that the defendant's motion for summary judgment be denied, the decision denying benefits be reversed, and the matter remanded to the Commissioner for further proceedings consistent with this recommendation.  The ALJ misapplied the law of this circuit with respect to evaluation of plaintiff's age, failed to call a vocational expert, used the Medical Vocational Guidelines in appropriately, and did not support his findings with substantial evidence.

## II. Standard of Review

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

2

> exists in the immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The claimant bears the burden of proving that he is disabled.  *Foster v. Halter*, 279

F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims.  20 C.F.R. § 404.1520.  In *Foster*,

279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in
> substantial gainful activity.  Next the claimant must demonstrate
> that she has a "severe impairment."  A finding of "disabled"
> will be made at the third step if the claimant can then
> demonstrate that her impairment meets the durational
> requirement and "meets or equals a listed impairment."  If the
> impairment does not meet or equal a listed impairment, the
> fourth step requires the claimant to prove that she is incapable
> of performing work that she has done in the past. Finally, if the
> claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional
> capacity must be considered to determine if other work can be
> performed. The burden shifts to the Commissioner at this fifth
> step to establish the claimant's ability to do other work.

On judicial review, a court must determine whether the agency's decision is supported

by substantial evidence. *Gillespie v. Commissioner*, 2010 WL 4063713, *3 (ED MI) (Lawson,

J.)(collecting cases).  Substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion, *Richardson v. Perales*, 402 U.S. 389, 401

(1971), see also *Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983).  If so, the

agency's decision is to be affirmed.

If the decision is not supported by substantial evidence, then Sentence Four of 42

3

U.S.C. § 405(g) provides that a district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [now Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  A Sentence Four remand provides the required relief in cases where there is insufficient evidence on the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See, Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citation omitted).  In a Sentence Four remand, the court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place."  *Faucher*, 17 F.3d at 175. Also under Sentence Four, an agency's decision may be reversed and benefits immediately awarded if the record adequately establishes a plaintiff's entitlement to benefits.  *Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).  Where an adequate record exists, the decision denying benefits can be reversed and benefits immediately awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.  *See Faucher*, 17 F.3d at 176.  Where remand would be an idle and useless exercise, courts are not required to convert judicial review of agency action into a ping-pong game.  *Wilson v. Commissioner*, 378 F3d 541, 547 (6th Cir 2004) (citing *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6(1969)(plurality opinion)).

### III.  Background

Here, the ALJ found that plaintiff completed the eleventh grade, which constitutes a limited education under the regulations.  Plaintiff has past relevant work as a furnace operator,

hi-lo driver, a crew person, and production person in an automobile factory. (Tr. 143)
Plaintiff was found disabled from performing his past relevant work, and thus the burden
shifted to the Commissioner to show that there was other work existing in significant numbers
that plaintiff could perform.

A. *The ALJ Decision*:

The ALJ found that plaintiff alleged onset date for disability is August 3, 2005.
Plaintiff is insured for Title II benefits through December 31, 2010, and has not engaged in
substantial gainful activity since the onset date.  He has the severe impairments of depressive
disorder NOS, and mixed personality disorder with antisocial and dependent features.  None
of his impairments meet the Listings. (Tr. 13)[2]   The ALJ found that plaintiff had no physical
impairments but due to his mental impairments he was limited to no frequent verbal
interactions with others.

The ALJ found that plaintiff had a longstanding history of depression and drug abuse,
had been violent with a co-worker at work, had been divorced twice, and had been battling
depression all of his life.  Plaintiff was admitted to Oakdale Recovery Residential on two
occasions.  Plaintiff was psychiatrically hospitalized for depression in 1978 and 1999.  He
worked for Ford for 16 years and "lost his job secondary to 30 years due to heroin
addiction."[sic?] (Tr. 15).

B. *Medical and Mental Health Evidence:*

Plaintiff was seen at Henry Ford Wyandotte Hospital in August, 2006. (Tr. 203-204)

_____

[2]This reference is to the page in the Administrative Transcript, consistent with the
Commissioner's brief.  Citations will be made in this manner. The docket entry is Doc. 13-2, p
14.

He was transferred about ten days later upon discharge to the Guidance Center.  The primary diagnoses were major depression and heroin dependence. (Tr. 189) It was noted that he had been using heroin since age 17 and had also been to Haverwick for treatment of depression in 1998 and 1999.  Plaintiff had suicidal ideation, substance abuse, and anxiety and panic attacks.  (Tr. 203-204)  He worked at Ford for 16 years, married twenty years, lost his job due to the addiction, his spouse divorced him and he ended up homeless.  (Tr.208) He was residing in a shelter and going to Narcotics Anonymous five times a week. (Tr. 209) Medical records from The Guidance Center reflect diagnoses of schizoaffective disorder, bipolar type, obsessive compulsive disorder (OCD), and a GAF score of 51 (the lowest score in the moderate difficulties, including conflicts with peers or coworkers).  (Tr. 266-298, 301-310, 372-374)

At the time of admission to Oakdale Recovery in August 2006, plaintiff's GAF was 35 (indicative of major impairment in several areas) and upon discharge, it was 40 (this score falls in the same category).  In September, 2006, a mental health evaluation indicates bipolar disorder, opioid dependence, and a GAF of 50 (serious symptoms, e.g. suicidal ideation, and/or serious impairment in social, occupational, or school functioning, e.g. unable to keep a job).

Consistent with that, medical records from Detroit Receiving Hospital reveal that plaintiff was admitted October 10, 2006 for about 8 days after being found unresponsive in a dumpster. (Tr. 236-237)   He was admitted to the ICU and then to the medicine floor.  His condition was critical. (Tr. 243)  On October 18, 2006, psychiatry determined that plaintiff was stable enough to leave and his TB test was negative.  Diagnosis on discharge was

6

aspiration pneumonia secondary to polysubstance abuse and drug overdose, depression/psychosis, and mediastinal lymphadenopathy. Id.

A Mental Residual Functional Capacity Assessment performed in November 2006 by Rom Kriauciunas, Ph.D. indicates that plaintiff has only moderate limitations in the areas of responding to changes in the work setting, maintaining socially appropriate behavior, interacting with the general public, maintaining attention and remembering instructions, and carrying them out. Otherwise, he is not significantly limited. (Tr. 248-250) The psychiatric review indicated that plaintiff suffers from bipolar syndrome (Tr. 255) and behavioral changes that are associated with regular use of substances that affect the central nervous system (Tr. 260-61). Plaintiff has mild to moderate difficulties and has experienced one or two episodes of extended decompensation. (Tr. 262)

At his psychiatric interview at the Guidance Center in June, 2007, plaintiff was noted to be dysphoric and anxious with poor concentration. He has experienced some problems with anger, legal difficulties, and family stressors. (Tr. 268-277) Plaintiff underwent treatment there through at least October, 2007. (Tr. 282) Progress notes show that plaintiff had some family support, was receptive to treatment, and still dealt with a lot of anger and depression. (Tr. 282-298)

In November, 2007, Leonard Balunas, Ph.D. indicated that psychiatrically plaintiff would be able to perform unskilled work based on his review of records. (Tr. 315-328) He noted that according to an August, 2007 evaluation by his treating psychiatrist, plaintiff's Bipolar I was in remission. Id. The reviewer opined that plaintiff could perform unskilled work involving 1, 2, or 3 step instructions with limited need for sustained concentration,

minimal contact with the general public and no more than occasional changes in the work

setting. (Tr. 332)

**IV. Discussion**

  *A. The ALJ Misapplied the Age Factor*

  The ALJ found that plaintiff, born August 4, 1957, was 47 years old on the date he

alleged disability.  The ALJ then analyzed the claim based on plaintiff's status as a "younger

person."   However, plaintiff was 52 years old <u>at the time of the ALJ decision</u> September 24,

2009.  He is therefore a "person closely approaching advanced age." (Tr. 104, 109); 20 CFR

404.1563(d).

  The law of this circuit is clear.   "For purposes of determining age under the grids, 'the

claimant's age as of the time of the **decision** governs.' *Varley v. Sec'y of Health & Human*

*Servs.,* 820 F.2d 777, 780 (6th Cir.1987) (emphasis added).", cited with the emphasis in

*Crook v. Barnhart* 244 F.Supp.2d 1281, 1283 (N.D.Ala.,2003).  As noted there, "In deciding

this issue, *Varley,* at 781 said: 'The fact that a claimant who is unable to engage in such

activity at the time of the decision may have been able to do so at some point in the past goes

to the question of the onset date, not the question of disability.'"   The *Crook* court also

found, at footnote 6, that  "The *Varley* court rejected the Secretary's argument that the relevant

time for determining plaintiff's age is either the date of the application or the date of the first

hearing. The decision date controls."

  For a person closely approaching advanced age (50 to 54), the Commissioner is

directed by his own regulations to consider whether the age, along with severe impairments

and limited work experience, may seriously affect the ability to adjust to other work.  20 CFR

404.1564(d).  The ALJ did not perform any such analysis.  Thus, substantial evidence in this regard is lacking.

### B. The ALJ Failed to Properly Use the Grids

The ALJ  improperly relied on the "grids" to reach the conclusion of not disabled. These "grids", i.e., the Medical-vocational Guidelines, are found in the regulations and are a shortcut to eliminate the need for calling a vocational expert.  Hurt v. HHS, 816 F.2d 1141 (6th Cir. 1987).   As was noted in Kirk v. Secretary of HHS, 667 F.2d 524 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983):

> "When the claimant does match one of the grid's patterns, then all the grid does is announce that substantial gainful work is available in the national economy for that particular individual; in other words, once a finding is made that the individual can do light work, for example, the grid operates to declare that light work is available."

667 F.2d at 535.

The grids are not applicable to predict disability when non- exertional limitations are the focus of the impairment, and should be applied only when the individual is capable of performing a wide range of jobs at a particular level, i.e., sedentary, light or medium.  Kirk, 667 F.2d at 528-529; Hurt, 816 F.2d at 1143.

In this case, plaintiff's impairments were all related to his mental health and psychiatric conditions.  Thus, application of the Grids was clear error.

Furthermore, the ALJ applied as a "framework" Grid Rule 204.00 where the exertional level is limited to heavy work/ very heavy work.  Medical records show that plaintiff was a "slender appearing Caucasian male." (Tr. 240 [Emergency Treatment Note])   He has a history of back pain, dental problems, and hepatitis.  (Tr. 272, 376) When examined at Sierra

9

Medical Group in June, 2009, plaintiff's height is listed as 5 ft. 7 in. and weight as 149 pounds. (Tr. 445) Nothing in his past relevant work would show that he had the ability to perform heavy work, and no vocational or medical testimony would support that conclusion, particularly since no vocational expert was called and the medical expert did not testify to any physical impairments.  Although the name of a vocational expert is listed on the transcript, that person was never asked to testify.   The ALJ's conclusion that the psychiatric limitations have little or no effect on the occupational base of unskilled work as found by the ALJ is without evidentiary support in the record.

## V.  Conclusion

In sum, a review of the record compels the conclusion that the findings are not supported by substantial evidence.   While the agency's decision may be reversed and benefits immediately awarded, see *Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994), the record here does not adequately establishe entitlement to benefits.  Proof of disability is strong but there should be a full medical evaluation of the plaintiff's medical and psychiatric conditions and a vocational assessment of plaintiff's ability to work and what level of work plaintiff can perform given his impairments, age, physical condition, and other circumstances.

Accordingly, it is recommended that the defendant's motion for summary judgment be denied, the decision denying benefits be reversed and the matter remanded to the Commissioner for further proceedings: to obtain a thorough consultive medical examination, to hold a hearing with a vocational expert, to make appropriate findings, and to use appropriate legal analysis.  It is further recommended that the determination be made by an ALJ from this area who is familiar with the law of this circuit.

10

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).  Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address  each issue contained within the objections specifically and in the same order raised.


　　　　　　　　　　　　S/Virginia M. Morgan_____
　　　　　　　　　　　　Virginia M. Morgan
　　　　　　　　　　　　United States Magistrate Judge

Dated: March 16, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon the parties via the Court's ECF System and/or U. S. Mail on March 16, 2011.

　　　　　　　　　　　　s/Jane Johnson
　　　　　　　　　　　　Case Manager to
　　　　　　　　　　　　Magistrate Judge Virginia M. Morgan